**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. REBECCA SPRINGER,<br><br>Plaintiff,<br><br>vs.<br><br>HENDRY COUNTY HOSPITAL AUTHORITY, d/b/a HENDRY REGIONAL MEDICAL CENTER; SMALL HOSPITAL INNOVATIONS, LLC; OVATION HEALTHCARE, LLC, f/k/a/ QHR HEALTH,<br><br>Defendants. | ) | Case No. 2:22-cv-00537-SPC-NPM |

---

**DEFENDANT HENDRY REGIONAL MEDICAL CENTER'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND SUPPORTING LEGAL MEMORANDUM**

---

Michael J. Bittman
Fla. Bar No. 0347132
Nelson Mullins Riley & Scarborough LLP
390 N. Orange Avenue, Suite 1400
Orlando, FL 32801
(407) 669-4200
Mike.Bittman@nelsonmullins.com

Erica S. James
Fla. Bar No. 1040231
Nelson Mullins Riley & Scarborough LLP
100 North Tampa Street, Suite 2460
Tampa, FL 33602
(813) 225-3014
Erica.James@nelsonmullins.com

**Counsel for Defendant Hendry County Hospital Authority, d/b/a Hendry Regional Medical Center**

# TABLE OF CONTENTS

**Preliminary Statement**......................................................................1
**Summary of Allegations** ...................................................................3
A. ICU Admissions and Billing.............................................................3
B. Kickbacks..........................................................................................5
C. Pain Management Claims..................................................................5
D. Retaliation.........................................................................................6
**Legal Memorandum** ..........................................................................6
I. Standard of Review.............................................................................6
II. The Amended Complaint is an Improper Shotgun Pleading..............8
III. The Amended Complaint Fails to Plead the Submission of a False Claim.....9
IV. The Amended Complaint Fails to Plead Fraud with Particularity ................14
V. The Amended Complaint Fails to Plead Materiality....................................16
VI. The Amended Complaint Fails to Allege an Illegal Kickback Scheme with Particularity.....................................................................17
VII. The Amended Complaint Fails to Allege a Conspiracy with Particularity ...18
VIII. Relator's Allegations Regarding Pain Management are Speculative............19
IX. Relator Has Not Adequately Stated a Retaliation Claim...............................19
X. The U.S. Constitution provides an Independent Ground for Dismissal Because Relator Lacks Proper Appointment..............................................21
**Conclusion**........................................................................................24
**Local Rule 3.01(g) Certification**.......................................................24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Heath*
WL 3602718 (M.D. Fla. Aug. 13, 2021) .............................................. 20, 21

*Am. Dental Ass'n v. Cigna Corp.*
605 F.3d 1283 (11th Cir. 2010) .....................................................................7

*Ambrosia Coal & Const. Co. v. Pages Morales*
482 F.3d 1309 (11th Cir. 2007) .....................................................................8

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)...............................................................................6, 20

*Corsello v. Lincare, Inc.*
428 F.3d 1013 (11th Cir. 2005) ........................................................... 18, 19

*Fla. ex rel. Stone v. Nature Coast Emergency Med. Found., Inc*
2021 WL 3134725 (M.D. Fla. Mar. 26, 2021) ............................................12

*Gose v. Native Am. Servs. Corp.*
109 F.4th 1297 (11th Cir. 2024) ................................................................8, 9

*Hopper v. Solvay Pharms., Inc.*
588 F.3d 1318 (11th Cir. 2009) ...................................................................14

*Kane v. Select Medical Corp., No. 8:21-CV-1050-CEH-TGW*
2025 WL 1726253 (M.D. Fla. June 20, 2025) ............................................22

*Lord v. Univ. of Miami*
571 F. Supp. 3d 1313 (S.D. Fla. 2021).......................................................20

*McDonough v. City of Homestead*
771 F. App'x 952 (11th Cir. 2019) ................................................................8

*Milazzo v. First Liberty Ins. Corp., No. 2:21-cv-550-JLB-MRM*
2021 WL 5843073 (M.D. Fla. Dec. 9, 2021) ...............................................14

*Olhausen v. Arriva Med., LLC*
124 F.4th 861 (11th Cir. 2024) ............................................................ 9, 9, 14

*Omni Healthcare Inc. v. N. Brevard Cnty. Hosp. Dist., No. 6:22-CV-696-JSS-DCI*, 2024 WL 4235850 (M.D. Fla. Sept. 19, 2024) ............................ 8-8

*St. Helena Clear Lake Hosp. v. Becerra*
30 F.4th 301 (D.C. Cir. 2022)..........................................................................16

*U.S. ex rel. Atkins v. McInteer*
470 F.3d 1350 (11th Cir. 2006) ..........................................................................8

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*
290 F.3d 1301 (11th Cir. 2002) ....................................................... 7, 9, 9-10

*U.S. ex rel. Cooper v. Blue Cross & Blue Shield of Fla., Inc.*
19 F.3d 562 (11th Cir. 1994) ..............................................................................7

*U.S. ex rel. Crocano v. Trividia Health Inc.*
615 F. Supp. 3d 1296 (S.D. Fla. 2022)..........................................................14

*U.S. ex rel. Graves v. C/HCA, Inc.*
WL 8679766 ...................................................................................... 12-13

*U.S. ex rel. Lewis v. Cmty. Health Sys., Inc., No. 18-20394-CIV*
2020 WL 3103994 (S.D. Fla. June 11, 2020).................................................17

*U.S. ex rel. McFarland v. Fla. Pharmacy Sols.*
358 F. Supp. 3d 1316 (M.D. Fla. 2017) .........................................................19

*U.S. ex rel. Smith v. Odom*
148 F.4th 1322; 2026 WL 922555 (11th Cir. 2025) .......................................13

*U.S. ex rel. Zafirov v. Fla. Med. Assocs., LLC*
751 F. Supp. 3d 1293 (M.D. Fla. 2024) .........................................................21

*U.S. v. HPC Healthcare, Inc.*
723 F. App'x 783 (11th Cir. 2018) ..................................................................13

*U.S. v. Med-Care Diabetic & Med. Supplies, Inc.*
2014 WL 12284079 (S.D. Fla. June 23, 2014)....................7

*U.S. ex rel. Kyer v. Thomas Health Sys., Inc., No. 25-1507*
2026 WL 1595887 (4th Cir. June 4, 2026)....................18

*U.S. ex rel. Publix Litigation Partnership, LLP v. Publix Super Markets, Inc., No. 8:22-CV-2361-TPB-AAS*
2025 WL 1381993 (M.D. Fla. May 13, 2025) ....................22

*U.S. ex rel. Sanchez v. Lymphatx, Inc.*
596 F.3d 1300 (11th Cir. 2010)....................7, 20

*U.S. v. Choudhry*
262 F. Supp. 3d 1299 (M.D. Fla. 2017) ....................17

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*
579 U.S. 176 (2016)....................16

*Vargas v. Lincare, Inc.*
134 F.4th 1150 (11th Cir. 2025).................... 9-9

**Rules**

Fed. R. Civ. P. 8(a)....................1

Fed. R. Civ. P. 8(a)(2)....................6

Fed. R. Civ. P. 9(b) .................... 1, 3, 7, 7, 8, 9, 11, 11, 13, 14, 17, 18, 19

Fed. R. Civ. P. 12(b)(6)....................1, 7

M.D. Fla. Local R. 3.01(g)....................24

**Statutes**

Fla. Stat. 68.082(2)(a) ....................2
Fla. Stat. 68.082(2)(b) ....................15
Fla. Stat. 68.082(2)(C) ....................2
Title 31 U.S.C. § 3729 ....................1
Title 31 U.S.C. § 3729(a)(1)(A) ....................2, 8
Title 31 U.S.C. § 3729(a)(1)(B) ....................2, 15
Title 31 U.S.C. § 3729(a)(1)(C) ....................2
Title 31 U.S.C. § 3730(h) ....................2, 20
Title 31 U.S.C. § 3730(h)(1) .................... 19-20
Title 42 U.S.C. § 1395f(l)(1) ....................16
Title 42 U.S.C. § 1395m(g)(1) ....................16

**Other Authorities**

Ch. 67-1446, Laws of Florida ....................1

Defendant, HENDRY COUNTY HOSPITAL AUTHORITY, d/b/a HENDRY REGIONAL MEDICAL CENTER (hereinafter "HRMC") moves to dismiss Relator's Verified Amended False Claims Act Complaint and Demand for Jury Trial (the "Amended Complaint") (DE 31), pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6).

## Preliminary Statement

HRMC[1] is a 25-bed critical access hospital located in Clewiston, Florida. DE 31 at ¶ 26. Relator was HRMC's Chief Nursing Officer ("CNO") from February 2015 until March 2021. *Id.* at ¶ 36. Approximately one year after being terminated and reported to legal authorities, Relator brought this action against HRMC, Small Hospital Innovations LLC ("SHI"), and Ovation Healthcare LLC, f/k/a/ QHR Health ("QHR") (collectively, "Defendants"), alleging violations of the False Claims Act, 31 U.S.C. §§ 3729, *et seq*. ("FCA"), and the Florida False Claims Act, §§ 68.082, *et seq*. ("FFCA"). DE 1. After a three-year investigation, the Government declined to intervene (DE 25, 28). The Court ordered the complaint to be unsealed (DE 29), and Relator filed an Amended Complaint on April 9, 2026, claiming:

[1] The Court may take judicial notice of the undisputed fact that HRMC was created pursuant to Chapter 67-1446, Laws of Florida, as amended, and operates as a special taxing district hospital—an independent subdivision of the State of Florida.

Count I – Defendants knowingly presented or caused to be presented, false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A)

Count II – Defendants knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims in violation of 31 U.S.C. § 3729(a)(1)(B)

Count III – Defendants knowingly conspired to commit a violation of the False Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C)

Count IV – Defendants knowingly presented, or caused to be presented to the Florida Medicaid Program, numerous false or fraudulent claims, in violation of § 68.082(2)(a), Fla. Stat.

Count V – Defendants knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of § 68.082(2)(b), Fla. Stat.

Count VI – Defendants knowingly conspired to commit a violation of the Florida False Claims Act, in violation of §68.082(2)(C), Fla. Stat.

Count VII – HRMC retaliated against Relator for her lawful acts done in furtherance of an action under the False Claims Act, in violation of 31 U.S.C. § 3730(h)

The Amended Complaint, by incorporating by reference 130 paragraphs into six counts against all three Defendant, is an impermissible shotgun pleading. She fails to plead the submission of a single false claim, the details of which are indispensable for a viable qui tam action. The Amended Complaint, permeated by Relator's basic misunderstanding on how HRMC is reimbursed by Medicare and Medicaid, lacks any specific information about HRMC's claims or patients; there are no exhibits, forms, billed amounts, paid amounts, or other necessary details about

the claims purportedly submitted to Medicare and Medicaid. Her allegations fall far short of the Rule 9(b) heightened pleading standard required by binding precedent. Relator's retaliation claim fails because the Amended Complaint does not plead the essential element of a retaliation claim: cognizable retaliation. Finally, should the Court not dismiss Counts I – VII, HRMC requests dismissal on the ground that Relator was not appointed in accordance with Article II of the U.S. Constitution.

## Summary of Allegations

Counts I through VI are based on "allegations set forth in Paragraphs 1-130" of the Amended Complaint (DE 31 at ¶¶ 131, 135, 139, 143, 147, 151). The alleged fraudulent conduct can be categorized as: ICU admissions and billing; kickbacks; and pain management claims.

### A. ICU Admissions and Billing

The Amended Complaint centers on HRMC's three-bed intensive care unit (ICU) (DE 31 at ¶ 28), and alleges that HRMC schemed to bill Medicare, Medicaid, and other government healthcare programs for critical care that was neither necessary nor indicated by patients' medical conditions. According to Relator, HRMC routinely admitted non-critically ill patients to its ICU to bill for more

expensive[2] critical care. *Id.* at ¶¶ 42-44, 74-77, 82, 91. Relator alleges that HRMC's ICU was not properly equipped to deliver critical care and lacked necessary equipment and staffing. *Id.* at ¶ 90.

Relator went to HRMC's Business Office Director to review billing claims for patients admitted to the PCU for sepsis. *Id.* at ¶ 71. She recalls reviewing about "fifty patients [sic] charts at the time." *Id.* at ¶ 72. Relator alleges all PCU patients had been billed as if they were seen in the ICU. Relator questioned why PCU patients were being billed as ICU patients, and the director informed her that HRMC always billed the 3-bed unit as an ICU regardless of what care was delivered. *Id.* at ¶ 73.

Relator claims to have done everything in her power to prevent the "admissions fraud scam," including conferring with admitting physicians about admissions and informing them that the ICU did not have any nurses available for the admission. *Id.* at ¶¶ 92-95. Between January and March 2021, Relator was "frequently admonished by both the CFO and CEO for the lack of ICU patient admissions in the hospital." *Id*. at ¶ 97.

---

[2] No details are provided for Relator's conclusory statement that HRMC received additional reimbursement based on the level of care provided. As discussed *infra*, Medicare reimburses HRMC based on the costs, not level of care provided.

**B. Kickbacks**

Relator alleges that HRMC paid improper kickbacks to SHI emergency room physicians for every ER patient admitted to the ICU. *Id.* at ¶¶ 115-116. As a member of HRMC's leadership team, Relator was privy to how HRMC paid its ER physicians. *Id*. at ¶¶ 37, 121. HRMC made monthly contractual payments to SHI for the services of ER physicians. The contract included monthly admission goals and quarterly bonuses if the admissions goal was exceeded. *Id*. at ¶ 122. A contract addendum provided that "ICU admissions were paid at a higher rate than an inpatient admission to the [non-ICU] unit." *Id*. at ¶¶ 30, 123.

**C. Pain Management Claims**

Relator claims that from "approximately 2010 to 2019" HRMC owned and operated a pain management clinic. *Id.* at ¶ 124. Following receipt of a complaint that a HRMC physician overseeing the clinic was running a "pill mill," an outside auditor produced an audit report of the clinic. *Id.* at ¶¶ 125-127. Though Relator admittedly "has never seen the report and believes that no one outside of the CEO has ever seen the report," she alleges that "[d]espite the audit (and its apparently dire results) and the immediate closure of the clinic, HRMC made no repayments to CMS[3] or any other payor related to the services provided" at the clinic. *Id.* at ¶ 129.

[3] CMS is an acronym for the Centers for Medicare & Medicaid Services within the U.S. Department of Health and Human Services. *See* https://www.cms.gov/.

Relator believes the HRMC physician overseeing the clinic was providing medically unnecessary services to patients. *Id.* at ¶ 130.

### D. Retaliation

Relator alleges she was fired in March 2021 for violating a patient's rights under the Health Insurance Portability and Accountability Act, known as HIPAA. *Id*. at ¶¶ 39, 98. She contends the HIPAA violation was falsified. *Id*. Relator believes she was terminated for her numerous complaints regarding HRMC's ICU admission practices. *Id.* at ¶ 100.

## <u>Legal Memorandum</u>

### I. Standard of Review

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A complaint must "state a claim to relief that is plausible on its face," with the court taking all well-pled factual allegations—but not legal conclusions—in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citation omitted). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. After disregarding allegations "not entitled to the assumption of truth," the court must determine whether the complaint includes "factual content" sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678-79 (citation omitted).

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the complaint's legal sufficiency. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). FCA allegations must survive the heightened pleading standard of Rule 9(b), providing that a party alleging fraud must state with particularity the circumstances constituting fraud. *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309 (11th Cir. 2002). Relator must plead specific "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* at 1310 (internal quotation marks and citation omitted). Without specific details of the submission of allegedly fraudulent claims, Rule 9(b) requires dismissal. *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302-03 (11th Cir. 2010). The Eleventh Circuit "rigidly enforces Rule 9(b)." *U.S. v. Med-Care Diabetic & Med. Supplies, Inc.*, 2014 WL 12284079, at *2 (S.D. Fla. June 23, 2014). Applying this standard may "make[] it hard for many persons to bring a *qui tam* suit," but that is by design to prevent "[s]peculative suits against innocent actors for fraud." *U.S. ex rel. Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 566-67 (11th Cir. 1994). Strict enforcement is "especially important" given the "quasi-criminal nature of FCA violations" and the risk that a "relator's strong financial incentive ... [will] precipitate the filing of frivolous suits."

*U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006); *see also Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1317 (11th Cir. 2024).

## II. The Amended Complaint is an Improper Shotgun Pleading

As a preliminary matter, the Amended Complaint should be dismissed because it is a textbook shotgun pleading, improperly lumping the Defendants together as a single fictitious entity. *See* DE 31 at ¶ 132 ("As set forth above, Defendants knowingly presented or caused to be presented, false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A)."); *see also id.* at ¶¶ 133, 136, 137, 140, 141, 144, 145, 148, 149, 152, 153.

Rule 9(b) requires plaintiffs to distinguish between multiple defendants and "inform each defendant of the nature of his alleged participation in the fraud." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (citation omitted); *McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir. 2019) (combining multiple claims against multiple defendants without specifying which defendant is responsible for which act constitutes a form of impermissible shotgun pleading); *Omni Healthcare Inc. v. N. Brevard Cnty. Hosp. Dist.*, No. 6:22-CV-696-JSS-DCI, 2024 WL 4235850, at *5 (M.D. Fla. Sept. 19, 2024) ("Because the counts in the amended complaint are so unclear that it is virtually impossible to know which claims are brought against which Defendants,

the court will dismiss the amended complaint without prejudice as a shotgun pleading.”).

Because Relator alleges multiple schemes across one hundred thirty paragraphs without tying the alleged facts to particular claims or Defendants, the Amended Complaint should be dismissed with leave to file another complaint that identifies which facts support each claim against which Defendant.

## III. The Amended Complaint Fails to Plead the Submission of a False Claim

The *sine qua non* of a FCA violation is the submission of a claim to the government. *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1316-17 (11th Cir. 2024) (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). In FCA cases alleging violations of § 3729(a)(1)(A) and (B), Rule 9(b) requires the relator to plead with particularity that a false or fraudulent claim was actually submitted. *Olhausen v. Arriva Med., LLC*, 124 F.4th 851, 865 (11th Cir. 2024). A relator’s complaint must allege facts about the time, place, and substance of the defendant’s alleged fraud, and the details of the defendant’s fraudulent acts, when they occurred, and who engaged in them. *Id*. (quotations and citation omitted).

General allegations are insufficient. *Vargas v. Lincare, Inc.*, 134 F.4th 1150, 1157 (11th Cir. 2025). The FCA targets false claims; not regulatory violations,

internal misconduct, or abstract theories untethered from government payment. *Id*. A relator cannot just allege a scheme – she must allege with particularity a scheme that actually led to false claims being presented to the government. *Olhausen v. Arriva Med., LLC,* 124 F.4th at 860, 865. It is not enough to plead generally that false claims were submitted; submission cannot be inferred from the circumstances. *Id*. at 860-61. Relators must allege the who, what, where, when, and how of fraudulent submissions. *Id.* at 861 (cleaned up).

Here, Relator fails to provide any information – much less the who, what, where, when, and how – about a false claim submitted to Medicare, Medicaid or any federal healthcare program. Completely missing from the Amended Complaint is any claim information, *e.g.,* patient identifier, date of claim submission, date of service, claim number, amount billed or paid by Medicare or Medicaid, representative sample claim. There are no exhibits, forms, or other necessary details about the claims or their submission. Nor does Relator allege that she witnessed, participated in, or otherwise has any personal knowledge of the purported scheme or that false claims were in fact submitted to Medicare or Medicaid. While generally alleging improper billing of patients admitted to HRMC's ICU, the Amended Complaint never identifies any submitted Medicare or Medicaid claim.

Absent such allegations, the Amended Complaint must contain "some indicia of reliability" that a false claim was in fact submitted. *Clausen*, 290 F.3d at 1311.

Rule 9(b) "does not permit a[n] [FCA] plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted." *Id.* Instead, "some indicia of reliability must be given in the complaint to support the allegation of an actual false claim." *Id.* (emphasis omitted). The Amended Complaint contains no indicia of reliability recognized by courts within the Eleventh Circuit.

The only detail about HRMC claims contained in the Amended Complaint is that Relator went to HRMC's Business Office Director to request review of billing claims for patients admitted to the PCU for sepsis. DE 31 at ¶ 71. Relator recalls reviewing about 50 patient charts at that time. *Id*. at ¶ 72. Relator found that all PCU patients "had been billed as if they were seen in an ICU and receiving critical care." *Id*. Relator questioned the director as to why PCU patients had been billed as ICU patients and was told that HRMC always billed the 3-bed unit as an ICU regardless of what care was being delivered. *Id*. at ¶ 73.

These allegations fail to explain how Relator found that all PCU patients "had been billed as if they were seen in an ICU." They also make no reference to Medicaid or Medicaid. These scant allegations of HRMC's claims are completely unsupported, although they indicate that Relator lacked access to HRMC's billing claims. Although serving as HRMC's Chief Nursing Officer with presumed access

to patient medical records and charts[4], the Amended Complaint is silent as to her participation in, or knowledge of, the submission of HRMC's claims, its billing practices or claims processing. Unlike the few cases providing sufficient indicia of reliability, the Relator here was not an employee with direct personal knowledge of the details surrounding the submission of claims to the government. *See Fla. ex rel. Stone v. Nature Coast Emergency Med. Found., Inc*, 2021 WL 3134725, at *4 (M.D. Fla. Mar. 26, 2021) (finding paramedic who did not work in billing department but allegedly had "inside information" about defendant's practice of providing medically unnecessary services to Medicare and Medicaid beneficiaries did not operate to provide the necessary indicia of reliability). The Amended Complaint likewise does not allege that Relator has experience with Medicare or Medicaid billing or reimbursement.

Relator is similarly situated to the relator, a clinical nurse manager, in *U.S. ex rel. Graves v. C/HCA, Inc.*, 2023 WL 8679766, No. 19-14086 (S.D. Fla. Nov. 8, 2023). Graves claimed defendants had engaged in upcoding. The court dismissed those claims in which Graves failed to plead the actual submission of a false claim. *Id*. at *8. Like the Relator in this case, Graves did not allege that she participated in, had any involvement in, or knew who was involved in the submission of a false

[4] "Medical records are inherently different from billing records." *U.S. ex rel. Graves v. C/HCA, Inc.*, 2023 WL 8679766 *7, No. 19-14086 (S.D. Fla. Nov. 8, 2023).

claim to the government. *Id*. at *7. Her complaint did not include a copy of any bills, payments, or forms pertaining to Medicare or Medicaid submissions. *Id*. There was no information alleged about Graves' knowledge of the claims or billing process generally. *Id*. In response to Graves' argument that she observed the defendant physician enter false codes in patient medical records, the court concluded she did not sufficiently allege the basis for her knowledge regarding fraudulent submissions to the government. This "specific detail" about false claims is required to establish the indicia of reliability necessary under Rule 9(b). *Id*. at *9. *See also U.S. v. HPC Healthcare, Inc*., 723 F. App'x 783, 790 (11th Cir. 2018) (holding that qui tam complaint lacked indicia of reliability where hospice social worker lacked adequate knowledge of the hospice's fraudulent billing practices, as it was a process far removed from her role).

Because the Amended Complaint fails to plead the submission of a false claim to the government and Relator's allegations lack indicia of reliability, Counts I – VI[5] must be dismissed.

[5] Because the FFCA is modeled after the FCA, the "same standard is applied to the evaluation of the claims under both statutes" and courts consider them together. *U.S. ex rel. Smith v. Odom*, 148 F.4th 1322, 1328 (11th Cir. 2025), *cert. denied sub nom. Smith v. Odom*, No. 25-893, 2026 WL 922555 (U.S. Apr. 6, 2026).

## IV. The Amended Complaint Fails to Plead Fraud with Particularity

Relator has insufficiently alleged the who, what, where, when, and how underlying HRMC's fraudulent conduct as required by Rule 9(b). *Olhausen v. Arriva Med., LLC*, 124 F.4th at 861. Instead, the Amended Complaint is littered with conclusory statements that do not state a claim.

As for the *who*, the Amended Complaint is devoid of any factual allegations concerning a single specific individual at HRMC who knew about or participated in the purported fraudulent conduct, prepared or submitted the purported false claims to Medicare or Medicaid, or signed the purported claims that are at issue. *See U.S. ex rel. Crocano v. Trividia Health Inc.*, 615 F. Supp. 3d 1296, 1307 (S.D. Fla. 2022) (dismissing complaint for failure to plead claims with particularity, noting that pleading did not provide "the name of any individual or individuals who submitted the claim"); *Milazzo v. First Liberty Ins. Corp.*, No. 2:21-cv-550-JLB-MRM, 2021 WL 5843073, at *2 (M.D. Fla. Dec. 9, 2021) (Rule 9(b) requires that the "alleged statements or omissions must be 'attributed to a specific person,' not a corporate entity."); *Hopper v. Solvay Pharms., Inc.*, 588 F. 3d 1318, 1326 (11th Cir. 2009) ("[W]e are unable to discern from the complaint a specific person or entity that is alleged to have presented a claim"). Nor does the Amended Complaint identify any patient for whom HRMC allegedly submitted an false claim.

With respect to the *what*, the Amended Complaint is bereft of allegations concerning how many purported false claims were submitted, the amount of reimbursement that was requested from a monetary perspective, or the total amount of funds alleged to be improperly received.

Regarding the *how*, the Amended Complaint is silent on which claim form was purportedly used by HRMC. Counts II and V impose liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B); § 68.082(2)(b), Fla. Stat. The Amended Complaint in paragraphs 24-25 refers to forms typically completed by "providers," but does not allege that HRMC executed any form or that any statement in a completed form was false. The Amended Complaint does not identify the particular document or statement alleged to be false, who made or used it, when the statement was made, how the statement was false, to whom the claims at issue were submitted, and whether the purported claims were submitted on paper or electronically.

As for the *when*, the Amended Complaint does not specify a period during which the alleged false claims or statements were submitted or the frequency with which the claims were made.

Based on Relator's failure to plead fraud with particularity, Counts I – VI should be dismissed.

## V. The Amended Complaint Fails to Plead Materiality

Supreme Court precedent requires relators to plead materiality. *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 192-93 (2016) (finding that a claim must be material to the government's payment decision to be actionable under the FCA). Materiality is not only essential to establishing liability under the FCA, but it is a "rigorous" and "demanding" requirement. *Escobar*, 579 U.S. at 192, 195 n.6.

Relator has not alleged that admitting non-critically ill patients to its ICU was material to HRMC's claims to Medicare or Medicaid. This is crucial because Relator admits being told by HRMC's Business Office Director that HRMC always billed the 3-bed unit as an ICU. DE 31 at ¶ 73. The director's statement is consistent with how Medicare reimburses critical access hospitals like HRMC: reimbursement is based on costs, not levels of care.[6] Thus, any clinical disagreement over admissions is immaterial to HRMC's Medicare claims – a fundamental misunderstanding permeating the Amended Complaint. Materiality needs to be alleged with

[6] Congress created the special designation of critical access hospitals to avert the closure of rural hospitals. *St. Helena Clear Lake Hosp. v. Becerra*, 30 F.4th 301, 302 (D.C. Cir. 2022). Unlike ordinary hospitals, which have Medicare costs reimbursed based on a fixed fee schedule, Medicare reimburses critical access hospitals more favorably. *Id*. They are reimbursed for 101% of their "reasonable costs" in providing patient services, regardless of the level of care provided. *Id.*; 42 U.S.C. §§ 1395f(l)(1), 1395m(g)(1).

particularity so HRMC can assess the Relator's theory that the level of care provided to patients was material to its Medicare or Medicaid claims.

### VI. The Amended Complaint Fails to Allege an Illegal Kickback Scheme with Particularity

Relator's failure to adequately plead FCA and FFCA claims predicated on an alleged Anti-Kickback ("AKS") violation constitutes a further ground to dismiss Counts I - VI. "[S]ince [AKS violations] are brought under the FCA, such claims must also be pleaded with particularity under Rule 9(b)." *U.S. ex rel. Lewis v. Cmty. Health Sys., Inc.*, No. 18-20394-CIV, 2020 WL 3103994, at *20 (S.D. Fla. June 11, 2020).

Here, Relator does not include any of the required details to make out her claim, like the "names of the doctors who received the incentives, the names of the defendants' employees who negotiated the incentives with the doctors, precisely what the incentives were, when they were provided, why they were provided, and why they were illegal." *Id.* at *22 (citing *U.S. v. Choudhry*, 262 F. Supp. 3d 1299, 1307 (M.D. Fla. 2017)). The case law does not allow Relator to make conclusory claims that defendants are receiving kickbacks and then pursue discovery to support her allegations. *Choudhry*, 262 F. Supp. 3d at 1309.

Relator's conclusory allegations regarding the contracts between HRMC and SHI for emergency room physicians provide nothing more than a description of a

payment structure, not an illegal kickback. Like the allegations before the Fourth Circuit recently in *U.S. ex rel. Kyer v. Thomas Health Sys., Inc.*, No. 25-1507, 2026 WL 1595887, at *10 (4th Cir. June 4, 2026), the Amended Complaint's allegations that payments to physicians induced referrals is conclusory; where there may be a lawful explanation "such as maintaining essential but unprofitable service lines, or allocating expenses across related entities," a complaint does not cross the plausibility threshold.

### VII. The Amended Complaint Fails to Allege a Conspiracy with Particularity

Counts III and VI for conspiracy also fail under Rule 9(b). To state a claim for conspiracy, Relator must allege "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005).

Relator does not put forth the necessary allegations to make out a conspiracy claim – she does not allege with particularity any agreement to violate the law, nor any acts performed in furtherance thereof. In *Corsello*, the court dismissed relator's assertion that two defendants conspired to defraud the government as a "bare legal conclusion [that] was unsupported by specific allegations of any agreement or overt

act." *Id.* Relator's Amended Complaint suffers the same flaw; in fact, she fails to even identify any defendant who would have entered into such an agreement. Relator, like *Corsello*, has alleged both underlying FCA claims that do pass Rule 9(b) scrutiny along with conspiracy claims that do not pass muster.

### VIII. Relator's Allegations Regarding Pain Management are Speculative

In six paragraphs (¶¶124-130) that appear to have been included as an afterthought, Relator alleges false pain management claims that are nowhere close to satisfying Rule 9(b). She does not detail any claims actually submitted for pain management and admits that she has never even seen the audit report she believes would support a FCA action. A relator cannot base a fraud claim on information and belief. *U.S. ex rel. McFarland v. Fla. Pharmacy Sols.*, 358 F. Supp. 3d 1316, 1326 (M.D. Fla. 2017); see also *Corsello v. Lincare, Inc.*, 428 F.3d at 1013-14.

To the extent Counts I - VI are based on the pain management claims, they should be dismissed.

### IX. Relator Has Not Adequately Stated a Retaliation Claim

Relator has failed to state a claim for retaliation. As amended in 2009, the FCA's anti-retaliation provision entitles an employee to relief if :

> discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee … in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). While paragraph 156 of the Amended Complaint repeats verbatim the last clause of the statute, such recitals, supported by mere conclusory statements, are insufficient. *Ashcroft v. Iqbal*, *supra*.

A plaintiff's allegations of protected activity under § 3730(h) are sufficient if they support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued by the employee in a qui tam action. *Lord v. Univ. of Miami*, 571 F. Supp. 3d 1299, 1312 (S.D. Fla. 2021). The plaintiff must show, at minimum, "that the activity had something to do with the False Claims Act — or that a reasonable person might have thought so." *Id.* at 1309. A relator's allegations of illegal activity, however, must "support a reasonable conclusion that the defendants were aware of the possibility of litigation under the [FCA]." *Alexander v. Heath*, No. 8:18-CV-639-CEH-JSS, 2021 WL 3602718, at *7 (M.D. Fla. Aug. 13, 2021) (citing *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010)).

Courts require a more demanding showing, even at the motion to dismiss stage, when the employee is a compliance professional. *Lord v. Univ. of Miami*, 571 F. Supp. 3d at 1313. A relator like Relator must do more than "merely grumble about job dissatisfaction or regulatory violations or report mischarging the government to a supervisor." *Id*. at 1314 (cleaned up, citations omitted).

By her own admission, Relator was admonished in the three months preceding her termination "for the lack of ICU patient admissions in the hospital." DE 31 at ¶ 97. Even more to the point, Relator "believes she was terminated for her numerous complaints regarding the improper practices HRMC engaged in regarding its ICU admissions." *Id*. at ¶ 100. Relator's complaints about admission practices were reasonably viewed by HRMC as Relator merely doing her job as CNO. Her allegations cannot be construed as notice to HRMC that its conduct constituted fraud on the government and possible FCA litigation. *Alexander v. Heath,* 2021 WL 3602718 at *7-8. Thus, Count VII should be dismissed because the allegations are insufficient to show that HRMC was on notice that Relator was trying to stop the submission of false claims to the government.

### X. The U.S. Constitution provides an Independent Ground for Dismissal Because Relator Lacks Proper Appointment

The Court should dismiss this declined *qui tam* in its entirety and with prejudice because Relator lacks proper appointment under Article II of the U.S. Constitution. *U.S. ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 751 F.Supp.3d 1293 (M.D. Fla. 2024) (oral argument before the Eleventh Circuit occurred on Dec. 12, 2025, Appeal no. 24-13581). *Zafirov* held that an FCA relator is an officer of the United States; historical examples of qui tam provisions do not exempt an FCA relator from the Appointments Clause; and because relators are not constitutionally

appointed, dismissal is the only permissible remedy.[7]

As to the first conclusion that an FCA relator is an officer of the United States, Judge Mizelle explained the Supreme Court precedent that if an individual "exercis[es] significant authority pursuant to the laws of the United States," and "occup[ies] a 'continuing' position established by law,'" that individual must be appointed consistent with the Appointments Clause. *Zafirov*, 751 F.Supp.3d at 1307 (citations omitted). Judge Mizelle found that "[b]ecause a relator possesses civil enforcement authority on behalf of the United States"—indeed, a relator has the "power to enforce public law through litigation"—that means that "a relator exercises significant authority. And because the FCA prescribes a relator's statutory duties, powers, and emoluments, and the position mirrors the role of a bank receiver or special prosecutor in its duration and non-personal nature, a relator occupies a continuing position." *Id*. Thus, relators are subject to the Appointments Clause.

As to the second conclusion that the history of the FCA did not exempt relators from the Appointments Clause, Judge Mizelle analyzed that "[t]he historical pedigree of qui tam provisions does not save [a relator] from qualifying as an officer

---

[7] Other judges in this district have rejected *Zafirov*, citing authority from federal appellate court to have considered the issue. *See U.S. ex rel. Publix Litigation Partnership, LLP v. Publix Super Markets, Inc.*, No. 8:22-CV-2361-TPB-AAS, 2025 WL 1381993 (M.D. Fla. May 13, 2025), *Kane v. Select Medical Corp*., No. 8:21-CV-1050-CEH-TGW, 2025 WL 1726253 (M.D. Fla. June 20, 2025).

under Supreme Court precedent." *Id*. at 1317-18. After finding the relator to be "an officer," the court found the relator "improperly appointed," as the "*qui tam* provision permits any 'person' to self-appoint by initiating an enforcement action," and "self-appointment, obviously, does not satisfy the Appointments Clause[.]" *Id*. at 1322.

And as to the third conclusion dismissing the case, Judge Mizelle explained that in Appointments Clause cases, "'invalidation' is 'the remedy,' which 'follows directly from the government actor's lack of authority to take the challenged action in the first place.'" *Id*. at 1323 (quotations and citations omitted). As the relator "lack[ed] the authority to prosecute on behalf of the United States" (*id.*), Judge Mizelle held that the relator "may not exercise significant authority under the laws of the United States by maintaining an enforcement action for punitive sanctions that could bind the government" (*id*. at 1322, n. 8), and also could not maintain a private action under any theory of partial assignment. Because the relator initiated the action when unconstitutionally appointed, the court granted the defendants' motion for judgment on the pleadings and dismissed the case.

Recognizing that the Supreme Court and the Eleventh Circuit have reserved the Article II issue, Judge Mizelle asserted that finding "an FCA relator is an officer of the United States is neither novel nor surprising." *Id*. at 1324 (citations omitted).

The Eleventh Circuit's resolution of these issues will have significant implications for this action in which Relator is asserting executive branch authority for herself without requisite supervision. This Court should adopt the reasoning of its sister district court, find Relator an officer of the United States who was not constitutionally appointed, and dismiss the action with prejudice.

**Conclusion**

For the foregoing reasons, HRMC respectfully requests that this Court enter an Order: (1) dismissing the Amended Complaint without prejudice, and (2) award any other relief deemed just and appropriate under the circumstances.

**Local Rule 3.01(g) Certification**

I, Michael J. Bittman, hereby cerify that I conferred by telephone with Relator's counsel, Jill Schwartz, John Hunt and Nathan Peak, on June 11, 2026, in a good faith effort to resolve the issues raised by this motion to dismiss, including to give Relator an opportunity to file a curative amended pleading. Counsel for Relator stated the motion to dismiss would be opposed and a curative amended pleading would not be pursued at this time.

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: *Michael J. Bittman*
Michael J. Bittman (Lead Counsel)
Florida Bar 347132
Mike.Bittman@nelsonmullins.com
390 North Orange Avenue
Suite 1400
Orlando, FL 32801
407.669.4200

Erica S. James
Fla. Bar No. 1040231
erica.james@nelsonmullins.com
100 North Tampa Street
Suite 2460
Tampa, FL 33602
813.225.3014

*Counsel for Defendant Hendry County Hospital Authority, d/b/a Hendry Regional Medical Center*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 12th day of June 2026, I filed the foregoing with the Clerk of Court by using the CM/ECF System which will send notice of electronic filing to the following:

| | |
|---|---|
| Jill S. Schwartz, Esq.<br>John M. Hunt, Esq. | Jeremy R. Bloor, Esq.<br>US ATTORNEY'S OFFICE – FLM<br>400 W. Washington St., Ste. 3100 |

| | |
|---|---|
| JILL S. SCHWARTZ & ASSOCIATES<br>655 W. Morse Blvd., Ste. 212<br>Winter Park, FL 32789<br>jschwartz@schwartzlawfirm.com<br>jhunt@schwartzlawfirm.com<br><br>Counsel for Plaintiff, Rebecca Springer<br><br>Nathan Peak, Esq.<br>(Admitted Pro Hac Vice)<br>District of Columbia Bar No. 978215<br>**Bracker & Marcus LLC**<br>3355 Lenox Road, Suite 660<br>Atlanta, Georgia 30326<br>Nathan@fcacounsel.com<br><br>Co-Counsel for Plaintiff, Rebecca Springer | Orlando, FL 32801<br>jeremy.bloor@usdoj.gov<br><br>Chad C. Spraker, Esq.<br>UNITED STATES ATTORNEY'S OFFICE<br>2110 First St., Ste. 3-137<br>Fort Myers, FL 33901<br>chad.spraker@usdoj.gov<br><br>Counsel for Plaintiff, United States of America |
| Matthew F. Vitale, Esq.<br>ASSISTANT ATTORNEY GENERAL<br>MEDICAID FRAUD CONTROL UNIT/COMPLEX CIVIL ENFORCEMENT BUREAU<br>1300 Riverplace Blvd.<br>Jacksonville, FL 32207<br>matthew.vitale@myfloridalegal.com<br><br>Counsel for Plaintiff, State of Florida | Rod A. Feiner, Esq.<br>COKER & FEINER<br>1133 Southeast 4th Ave.<br>Fort Lauderdale, FL 33316<br>rafeiner@coker-feiner.com<br><br>Counsel for Defendant, Small Hospital Innovations, LLC |
| Heather Gwinn, Esq.<br>Denise Rushton, Esq.<br>**GORDON REES SCULLY MANSUKHANI**<br>13361 Atlantic Blvd.<br>Jacksonville, FL 32225 | |

| | |
|---|---|
| Email: hgwinn@grsm.com (primary)<br>Email: drushton@grsm.com (primary)<br>Email: gfox@grsm.com (secondary)<br>Email: llacayo@grsm.com (secondary)<br><br>and<br>Christine Stickley, Esq.<br>(Pending PHV Admission)<br>555 Seventeenth Street, Suite 3400<br>Denver, CO 80202<br>Email: cstickley@grsm.com<br><br>Counsel for Defendant Ovation Healthcare,<br>LLC, f/k/a QHR Health | |

*Michael J. Bittman*
Michael J. Bittman